UNITED STATES of America,
Plaintiff,

v.

Jose Terrones RIOS, Defendant.

Crim. No. 26019.

United States District Court
S. D. California,
Central Division.

Feb. 10, 1961.

Laughlin E. Waters, U. S. Atty., Robert John Jensen, Asst. U. S. Atty., Chief of Crim. Div., and Norman W. Neukom Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Harvey M. Grossman, Los Angeles, Cal., for defendant.

HALL, Chief Judge.

After affirmance of the defendant's conviction on appeal by the Ninth Circuit—256 F.2d 173—the Supreme Court granted certiorari, vacated the judgment and remanded the case to this court for further proceedings consistent with its opinion. 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688.

In that opinion the Court stated: "The only question that remains in this case, therefore, is whether the Los Angeles officers obtained the package of heroin 'during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures.'" 364 U.S. at page 255, 80 S.Ct. at page 1433. "The validity of the search thus turns upon the narrow question of when the arrest occurred, and the answer to that question depends upon an evaluation of the conflicting testimony of those who were there that night." 364 U.S. at page 262, 80 S.Ct. at page 1437.

Pursuant thereto, the defendant filed a motion to suppress the evidence and for acquittal. The motion was set for hear-

ing, and proceedings were had on October 31, November 7, 21, 28, and December 12, 1960. The defendant was present with counsel, and made a motion to hear further testimony, stating that he had subpoenaed the taxi driver who had testified at the time of the trial, and requested that Police Officers Beckman and Grace be produced for further cross-examination.

It was and is my view that the Supreme Court, by its opinion, did not indicate that the case should be re-opened for new trial or the taking of additional evidence on any phase of the case, but rather that this Court should make a new "evaluation" of the "conflicting" testimony of the witnesses, two of whom the Court had already heard twice, and one of whom the Court had heard once.

The two officers, Beckman and Grace, had twice been subjected to cross-examination by defendant's counsel, and the taxi driver once.

Accordingly, I denied the motion of defendant to produce the officers for further cross-examination and to produce the taxi driver as a witness. No other witnesses were offered by either side.

I have again read all of the testimony and all of the arguments, opinions and briefs, and have taken into consideration all of the imponderables which a trier of the facts, who sees and hears the witnesses, must weigh, and which do not and cannot appear in the cold transcript of record.

In that connection, I vividly recall the taxi driver while on the stand, and from his manner of testifying, coupled with his testimony I concluded, and now conclude, having seen and heard thousands of witnesses in 17 years on the bench and 23 years previously at the Bar, that while not belligerent (a comparative word at best), he was not an impartial or unbiased witness, but his bias against the police officers was manifest to the point where his testimony lacked probative force in the points wherein it conflicted with other testimony and evidence.

Without extended discussion I now resolve such conflicts in the testimony as there are, and find the facts concerning the arrest and the seizure of the narcotics to be as follows:

(1) That Officers Beckman and Grace were lawfully making a routine surveillance of the taxicab and its occupants, and for the purpose of making a routine interrogation, they approached the taxicab but did not stop or detain it until after the commission of a crime by the defendant in the officers' sight and presence;

(2) That the taxicab in which the defendant was riding was not stopped by the officers;

(3) That it stopped for a traffic light at a brightly-lighted intersection;

(4) That while the taxicab was thus stopped, Officer Beckman approached the taxicab on the right side and Officer Grace approached it on the left;

(5) That Officer Beckman flashed his flashlight on his badge, exhibiting it to the driver and to the defendant who was sitting in the back seat, to identify himself, and he did identify himself orally as a police officer;

(6) That after, and almost simultaneous with, such identification, the officer saw the defendant, and the defendant did, voluntarily take from his pocket a rubber contraceptive of a light color which appeared to the officer to be filled with a light powder, and defendant voluntarily dropped it to the floor of the cab;

(7) That immediately thereafter the defendant and Officer Beckman simultaneously reached for the door of the taxicab, and both opened the door;

(8) That defendant alighted from the cab, and he was not pulled or forced out of it by either officer; and that thereupon, and not before, Officer Beckman announced that defendant was under arrest on suspicion of narcotics; and thereupon, and not before, the defendant was under arrest;

(9) That the time transpiring between the time Officer Beckman identified himself as above set forth and the time when

defendant was out of the cab was about one minute;

(10) That within seconds after defendant got out of the taxicab, Officer Grace retrieved the contraceptive containing the heroin from the floor of the taxicab where the defendant had placed it by dropping it there;

(11) That by voluntarily dropping the package of narcotics to the floor and getting out of the cab, the defendant voluntarily gave up possession thereof;

(12) That Officer Beckman had had more than four years experience working the Narcotic Detail in Los Angeles, and had made over 400 arrests;

(13) That it was known to him that a common method of carrying heroin is to carry it in a rubber contraceptive;

(14) That under those circumstances and the "testimony of the officer's own senses," (Burks v. United States, 9 Cir., 287 F.2d 117, and cases therein cited), in light of his experience, when he saw defendant take a contraceptive from his pocket and drop it to the floor of the taxicab, and when he observed the nature of the object, he had reasonable cause to believe that contraceptive contained heroin, and reasonable cause to, in good faith, believe that defendant had committed a felony in his presence, viz.: violation of the State and Federal Penal Statutes relating to narcotics.

From the foregoing, I conclude as a matter of law, that the arrest was lawful, the search and seizure were reasonable and lawful, and if conducted by federal officers, the arrest and search and seizure would have been reasonable and lawful, and the arrest and search and seizure did not violate the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment, and would not have done so if conducted by federal officers.[1]

The motion of the defendant to suppress the evidence is denied, and the motion for judgment of acquittal is denied.

The United States Attorney is directed to re-calendar the case for sentence.

---

1. I am not unmindful of the proceedings in the State Court. The Committing Magistrate who saw and heard the witnesses held the arrest, search and seizure lawful. The Trial Judge neither saw nor heard any witnesses but had before him only the typed transcript of the proceedings before the Committing Magistrate.

At the hearing on the motion to suppress before this court, I held it my duty to independently try the issues raised by the motion, irrespective of the conclusions of the State Trial Judge, and so stated to the record, and proceeded to do so, although the defendant wished to rely on the State Court transcript, and government counsel seemed confused as to whether to rely on the "silver plat-ter" doctrine, I did not rely on that doctrine, although the record may not be clear in that respect inasmuch as the government, on appeal, seemed to rely on the "silver platter" doctrine.

The Supreme Court, in its opinion, stated (364 U.S. at page 260, 80 S.Ct. at page 1436): "For all that appears, this ruling (admitting the heroin in evidence) may then have been based solely upon the 'silver platter' doctrine."

The transcript is unclear in that respect for the reason that I did not deem it proper for me to state, in the presence of the jury and as ground for my ruling, that I had theretofore heard and tried and ruled upon the question of search and seizure.