HURLEY, Judge.
This appeal contests the validity of a search and seizure. We hold that the police lacked probable cause to search the defendant’s truck and, therefore, we reverse.
At about 5:30 p.m. on Tuesday, April 28, 1981, a deputy sheriff observed the defendant driving a 1979 Ford, four wheel drive, pick-up truck. It “was cream with a brown stripe .... It had a white camper shell that protruded over the top of the cab with two large spot lights on the front of the camper shell. And it had what appeared to be a heavy duty suspension on the four wheel drive vehicle.” Although the vehicle appeared to be riding in a normal (unloaded) fashion, the officer was suspicious because “[i]t fit a profile of several vehicles that ... [he had] seen in the past utilized in smuggling operations.”
With the help of officers on the ground and air reconaissance, the police kept the vehicle under surveillance for the next three hours. They observed the truck go north, return to the south, stop at a gas station and proceed north again. It approached an airport, stayed for a brief time and then continued north again. The defendant stopped to make a telephone call and then drove back to the airport road. There, he was joined by another person driving a black Bronco. Both vehicles proceeded north and stopped at a gas station where the drivers talked with a third individual. Then, the defendant drove onto a private ranch “to a hammock which was close to what appeared to be an airstrip.”
When the defendant’s truck was next seen, it was riding lower than before; it appeared to be heavily loaded. The police followed it to a plaza on U.S. 98. As the defendant got out of the truck, he was approached by a deputy sheriff who asked for some identification. The officer also advised the defendant of his Miranda rights. Cardboard boxes, partially covered by a carpet, were visible in the rear of the truck. At this point the officer told the defendant that he was going to open the tailgate because the officer felt that the defendant was transporting contraband. The officer opened the tailgate and found that the box was filled with yellow plastic bags which contained methaqualone pills. The trial court evaluated these facts and found that the search was valid. We cannot agree.
At the outset, it is important to note what this case is not about. Because the officer began to search the truck almost immediately, this case is not governed by Florida’s Stop and Frisk Law, section 901.151, Florida Statutes (1981). In other words, “founded suspicion” is not the issue here. The critical question is, “Did' the officer have probable cause prior to the time he initiated the search?” See, United States v. Ross, 456 U.S. -, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In attempting to answer this question, we are mindful of the admonition that
*977 probable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of arrest.... The test of probable cause is not what reaction victims — or judges — might have but what the totality of the circumstances means to police officers. Conduct innocent in the eyes of the untrained may carry entirely different ‘messages’ to the experienced or trained observer.
State v. Profera, 239 So.2d 867, 869 (Fla. 4th DCA 1967) (quoting from Jackson v. United States, 112 U.S.App.D.C. 260, 302 F.2d 194 (1962) and Davis v. United States, 133 U.S.App.D.C. 172, 409 F.2d 458 (1969)). Nonetheless, it is the responsibility of the court to determine whether the objective information available to the police officer was capable of supporting a reasonable belief that the defendant was violating the law.
We discussed the concept of probable cause in State v. Keen, 384 So.2d 284, 286 (Fla. 4th DCA 1980), and said that
[pjrobable cause is defined as “a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in believing the accused to be guilty.” The arresting officer need not actually see the law being violated, nor must he satisfy himself beyond any question that a crime has been committed. The person making the arrest may act either upon facts within his own knowledge or on those communicated to him by a responsible person. Probable cause to arrest exists where a reasonable person, having the specialized training of a police officer in reviewing facts known to the arresting officer prior to the actual time of arrest, would come to the conclusion that a crime is being or has been committed by the person to be arrested.
Id., at 286 [citations omitted].
The facts in the case at bar do not amount to probable cause. Although varying degrees of significance can be attached to individual facts, seen in their totality they do not support a reasonable belief that the defendant was violating the law. Therefore, the search of the truck was without justification. It is significant that during the three hour covert surveillance, no criminal activity was observed. Neither an air drop nor the loading of packages in suspect covering, e.g., burlap bags was observed. Furthermore, the make of the defendant’s vehicle together with its equipment are commonplace in rural Florida. The fact that the defendant talked with other individuals or drove the route outlined above does not indicate criminal activity. Accordingly, we reverse the defendant’s conviction together with the order denying the motion to suppress and remand the cause for further proceedings consistent with this opinion.
REVERSED and REMANDED.
ANSTEAD and WALDEN, JJ., concur.